**IN THE COURT OF APPEALS OF IOWA**
No. 15-2199
Filed March 9, 2016

**IN THE INTEREST OF L.L., M.L., E.L., and S.L.,**
**Minor Children,**

**F.L., Father,**
        Appellant,

**C.L., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Franklin County, Peter B. Newell, District Associate Judge.

A father and mother separately appeal from the orders terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**

Larry W. Johnson of Walters & Johnson, Iowa Falls, for appellant father of S.L.

Barbara J. Westphal of Barbara J. Westphal, Attorney at Law, Belmond, for appellant mother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Randy D. Johansen of Johansen Law Firm, Sheffield, attorney and guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

The mother of four children and the father of S.L. appeal separately from the termination of their parental rights. Both parents argue the State failed to prove by clear and convincing evidence that reasonable efforts toward reunification have been made. The mother also asserts the juvenile court erred in (1) determining the children could not be returned safely to her care and (2) denying her request for an additional six months to work toward reunification with her children. We affirm on both appeals.

## I. Background Facts and Proceedings

The mother has four children involved in this case: L.L., born in 2007; M.L., born in 2010; E.L., born in 2012; and S.L., born in 2013.[1] The juvenile court terminated the mother's parental rights to these four children pursuant to Iowa Code section 232.116(1)(g) (2015). The juvenile court terminated the parental rights of the biological father of S.L. pursuant to section 232.116(1)(h).[2]

The family has a long history of involvement with the Iowa Department of Human Services (DHS). In March 2014, DHS received reports of domestic violence between the parents, as well as reports that the children were being spanked with belts and hit with shoes, a rolling pin, or other objects. In April 2014, DHS went to the family's home and observed that the home did not have

---

[1] The mother has two other children not involved in the present case. In June 2014, the juvenile court in Marshall County terminated the mother's parental rights to an older child. The mother also has another child with the father of S.L., born in April 2015. Less than two months after the child's birth, the child was removed from the parents' care and custody due to allegations of domestic violence between the parents and the father's intoxication, and placed in family foster care.

[2] The juvenile court also terminated the parental rights of the biological fathers of L.L., M.L., and E.L., or any other purported fathers, under section 232.116(1)(b) (abandonment). They do not appeal.

heat, electrical wires were exposed, there was little food in the home, the staircase leading to the second floor did not have railings, and the children were suffering from untreated head lice. DHS had also learned the parents had been caring for the children while intoxicated and L.L. was often missing school. The DHS social workers offered to take the mother and her children to a domestic violence shelter, but she refused because she did not want to leave her belongings. Fearing for the children's safety, DHS removed the children and placed them in family foster care.

In June 2014, the children were adjudicated children in need of assistance (CINA). That same month, the mother completed a mental health evaluation after DHS expressed concerns. The provider recommended that the mother participate in weekly or biweekly therapy, but the mother only attended two sessions in the ten months following the evaluation. The mother completed a second mental health evaluation in June 2015, but again only attended two or three follow-up sessions.

The juvenile court held dispositional and review hearings in August 2014, November 2014, and February 2015, confirming the CINA adjudication and out-of-home placements.

In February 2015, both parents started semisupervised visits with the children. The parents consistently attended the twice-weekly, two-hour visits, only missing a few times when they were ill or had to work. However, they rarely contacted the children outside of their visitation, despite having been given the opportunity to do so by the children's foster parents and having access to a phone.

In April, DHS raised concerns about visitation, including a lack of supervision of two children during a visit and a report that the mother had become upset during a visit and pulled L.L.'s finger. Later that month, the court held a permanency hearing, and the State filed a petition for termination of parental rights.

In May, the parents' visits with the children returned to fully supervised due to allegations that the parents had exposed their youngest child, not at issue in the present case, to domestic violence. Until that time, the parents had lied to DHS, concealing the fact they were still living together. Shortly thereafter, the mother obtained separate housing and ended her relationship with the father.

The juvenile court held a termination hearing on dates in August, October, and November 2015. Some progress was noted during the course of the hearings, including that the parents had ended their relationship. The mother testified she had made significant progress between the August and October hearing dates and had recently started attending therapy and taking medication for her mental health issues. She was employed and provided some food, clothing, and toys for the children at visits. She also had a safe home for the children, though it could not accommodate all of them.[3] The father had recently completed substance abuse treatment and testified he would stay clean and

---

[3] At the time of the August hearing date, the mother was living in a one-bedroom apartment with two roommates, including her new boyfriend and a female friend. The mother allowed both of these individuals to be present during visits with her children despite their not having been approved as caretakers for the children. At the time of the October hearing date, the mother was living in a two-bedroom apartment with her boyfriend, who still had not been approved as a caretaker.

sober. His parenting skills and engagement with his children were improving.[4] He was also employed and able to provide for the children financially. He was living in a safe home but shared space with another person whose last name he did not know and who had not been approved to care for the children.

Nevertheless, a DHS social worker testified that all of the same concerns existed as when the CINA case had been opened eighteen months previously, including the parents' history of domestic violence that they never fully addressed, the mother's mental health issues, the father's substance abuse problems, and both parents' parenting skills and supervision of the children. The Family Safety, Risk, and Permanency (FSRP) provider testified she had remaining concerns regarding the mother's ability to parent because, although the mother was no longer ignoring the children during visits, she would get frustrated and short-tempered with them. The FSRP provider stated the mother often allowed L.L. to act as the caregiver for her younger sisters during visits and the children did not listen to their mother or respect her as a parent. The FSRP provider also testified she still had safety concerns regarding the father's supervision of the children. She stated the father's general care for the children had improved and he was receptive to suggestions on how to parent his children, but he could not yet independently care for them. Several witnesses testified the mother did not have a strong emotional attachment and bond with her children. The DHS social workers and the FSRP provider recommended termination of both the mother and father's parental rights.

---

[4] At the time of the termination hearing, the father was participating in services for both S.L. and his second child with the mother, who is involved in a separate CINA action.

In December 2015, the court entered an order terminating the parents' parental rights. The mother and the father of S.L. separately appeal.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but we are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the children. *Id.* at 776.

## III. Analysis

### A. Reasonable Efforts

Both parents separately argue the State failed to prove by clear and convincing evidence that reasonable efforts toward reunification have been made. Each contends DHS failed to increase their visitation with the children despite their progress and participation in services in the months leading up to termination.

Under our law, the State must make reasonable efforts to reunify the family as quickly as possible after children have been removed from their parents' care and custody. Iowa Code § 232.102(7). The reasonable-efforts requirement is not, however, viewed as a strict substantive requirement at termination. *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Instead, it impacts the State's burden of proving those elements of termination that require reasonable efforts. *Id.* In determining whether reasonable efforts have been made, the court considers "[t]he type, duration, and intensity of services or

support offered or provided to the child and the child's family." Iowa Code § 232.102(10)(a)(1).

The State argues neither parent preserved error on their reasonable-efforts challenges because neither parent raised the issue of increased visitation to the court prior to the termination hearing. The mother claims she preserved error on this issue by objecting to DHS's lack of reasonable efforts throughout the termination hearing. The father makes no claim for preservation of the issue.

Our court has previously stated:

> While the State has an obligation to provide reasonable services to preserve the family unit, it is the parent's responsibility "to demand other, different, or additional services *prior* to the termination hearing." Complaints regarding services are properly raised "at removal, when the case permanency plan is entered, or at later review hearings." When a parent "fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." Similarly, we will not review a reasonable efforts claim unless it is raised prior to the termination hearing.

*In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015) (citations omitted). Furthermore, "voicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge." *In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002); *see also* Iowa Code § 232.99(3) (requiring the court, at any dispositional review or permanency hearing, to inquire whether any additional services are needed, and advise the parties that failure to request additional services may preclude the party from challenging the sufficiency of the services in a termination-of-parental-rights proceeding).

The record shows neither parent raised their complaints regarding visitation with the juvenile court prior to the termination hearing. Therefore, we find neither parent has preserved error on their reasonable-efforts claims for our review.

*B. Statutory Grounds*

The mother argues the State has not proved by clear and convincing evidence that the children could not be returned safely to her care, custody, and control at the time of the termination hearing or within a reasonable time.[5] The juvenile court terminated the mother's parental rights to her four children under Iowa Code section 232.116(1)(g).[6] On appeal, the mother challenges the grounds for termination under section 232.116(1)(f).[7] The mother's failure to

---

[5] The father does not challenge the statutory grounds for termination on appeal, thus we do not address this issue as to the father and affirm the statutory grounds for termination. *See In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010) (stating that when a parent does not challenge the existence of statutory grounds, we need not address the issue).

[6] Termination of parental rights under paragraph (g) requires the court to find the State proved all of the following:

> (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (2) The court has terminated parental rights pursuant to section 232.117 with respect to another child who is a member of the same family . . . .
> (3) There is clear and convincing evidence that the parent continues to lack the ability or willingness to respond to services which would correct the situation.
> (4) There is clear and convincing evidence that an additional period of rehabilitation would not correct the situation.

Iowa Code § 232.116(1)(g).

[7] Termination of parental rights under paragraph (f) requires the court to find the State proved all of the following:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

challenge section 232.116(1)(g) waives any claim of error related to that ground. S*ee Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."). Therefore, we affirm the termination on statutory grounds under section 232.116(1)(g).

*C. Additional Six Months*

The mother also argues she has shown significant progress and the juvenile court should have granted her an additional six months to work toward reunification with her children.

Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension of time if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

We recognize the mother made great strides in the last few months leading up to the termination, particularly between the August and October termination hearings. She had secured safe housing and employment, addressed her mental health needs, and terminated her relationship with S.L.'s father. However, we cannot ignore the reality that the children were out of the mother's care and custody for over eighteen months. Over a year after DHS had opened the case before us, the mother had another child removed from her care due to her violent relationship with S.L.'s father and his intoxication. Until that

---

(4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.
Iowa Code § 232.116(1)(f).

time, the mother had lied about her relationship with S.L.'s father and failed to take advantage of services other than visitation. Although the mother completed mental health evaluations prior to the termination hearing, she did not follow through on counseling and treatment until after the first day of the termination hearing in August 2015. Several witnesses testified at the hearing that the mother had not developed a bond with her children and the children did not respect her. The mother became frustrated and irritated during visits with the children and never demonstrated she could parent all of her children independently. Instead, she relied on L.L. to parent her younger sisters. We find the mother's efforts and improvements came too little and too late. *See In re C.B.*, 611 N.W.2d at 495 ("[The mother]'s efforts are simply too late. The changes in the two or three months before the termination hearing, in light of the preceding eighteen months, are insufficient. . . . A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting.").

It is well established that once the statutory time frames for termination have been satisfied, the case must be viewed with a sense of urgency. *In re C.B.*, 611 N.W.2d at 495; *see also In re P.L.*, 778 N.W.2d at 41 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). We cannot ask these children to continuously wait for their mother to become a stable parent. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010); *see also In re A.B.*, 815 N.W.2d at 778 ("It is simply not in the best interests of children to continue to

keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). Our review of the record does not persuade us that circumstances would be such that the need for removal would no longer exist at the end of six months. *See* Iowa Code § 232.104(2)(b). Accordingly, we affirm the juvenile court's denial of the mother's request for an additional six months.

### IV. Conclusion

Upon our de novo review of the record, we affirm the termination of the mother's parental rights on statutory grounds under Iowa Code section 232.116(1)(g). We further find neither parent has preserved error on their reasonable-efforts claims. Finally, based upon the mother's delay in participating in services and her inability to parent her children independently, we agree with the juvenile court's denial of the mother's request for an additional six months to work toward reunification with her children.

**AFFIRMED ON BOTH APPEALS.**